Thorley Nursery Goods Co. v. Thorley Industries LLC Okay, the next case before the court is Wonderland Nursery Goods v. Thorley Industries LLC. Mr. Roche, you want four minutes for rebuttal? Yes, Your Honor. Okay. Did I pronounce that correctly? Roche, R-C-H. Roche, R-C-H. Okay. You may proceed. Thank you, Your Honor. My name is David Roche. I'm representing the plaintiff in this case, excuse me, the patent holder. This is a reexamination, inter partes reexam. One of the last ones I suppose this court may address. Thorley in this case has taken what I think is an extraordinary position. That construction of the preamble is not necessary. Not necessary in an obviousness case when one of the references, the one they call primary reference, meets the preamble. The other one doesn't have to meet the preamble. Well, I think that's an untenable position because... Well, does it have to meet the preamble to fall within the bounds of relevant prior art? No, it doesn't. It doesn't have to meet the preamble, but my position is that in order to engage in a proper analysis of the analogous art test, you need to understand the invention. And in order to understand the invention, you need to construe the preamble. Well, let's assume that the board had construed the preamble. What difference would it make? Well, I think that it manifests itself in the way they applied, in particular, the second Bigeot test. They did not affirm the examiner on either count when it comes to following the analogous art test. The examiner took the approach of first saying, well, the two references are in the same field. He didn't say anything about what field the invention was in. Now, I would acknowledge that Castor is in the same field as the invention. But he had earlier said that Castor's field was to induce relaxation and sleep in sitting infants. And then he changed when he applied this, albeit erroneous test, first test for Bigeot, saying that Castor and Nordella are in the same field. So, I think the board recognized they couldn't affirm the examiner's application of the first Bigeot test. So, they went to the second one, which is to look at the problem that the invention addressed. Again, the examiner had compared the problem addressed in Castor and Nordella. Never addressed, the examiner didn't, what problem the invention addressed. Now, this is where I think the real nub of the case went haywire. The board, unable to really affirm either of the two erroneous applications of the test that the examiner engaged in, went and completely revamped the second test. And this is where I believe they ignored, not only the specification, but the claim as properly construed. Because what they said was, the problem relates to mechanisms that cause a chair to move up and down and back and forth. They didn't say anything about what problem our inventor attempted to solve. They didn't reference the specification at all. And they didn't address the claim. If they had addressed the claim, at least, as properly construed, they would have understood that the claim is for an infant rocking chair. Not for a chair that moves up and down. Are you trying to tell us that it was improper for the board to go to Nordella at all? Or that their reasoning for getting to Nordella was flawed? Well, I think that you can only get to Nordella if you find that it's analogous art. But are you saying it has to be, in order to be analogous, it has to be addressing the comfort of infants? I mean, what if it was addressing the comfort of 10-year-olds? I don't know. But Nordella certainly wasn't addressing comfort of any kind. And my point is that the board, if they're going to apply, first of all, they applied a new test entirely. I mean, a new version of the second physio test. They didn't follow either of the ones that the examiner did. That alone, I think... Well, are you saying that was a new ground of rejection? Yes. And one that you didn't have an opportunity to address? Yes. But didn't you address Nordella completely? I mean, I don't understand where the prejudice would be. Well, we addressed what the examiner said. The examiner said it's not analogous because... Well, it is analogous because it's in the same field of invention. Well, it didn't say anything about our field of invention. They said that Caster's field of invention is the same as Nordella's field of invention. Having earlier said a completely different field for Caster is applicable. But putting aside all this field of invention, didn't you have the opportunity to explain why the combination of Nordella and Caster didn't disclose all the elements? And you made arguments as to why Nordella didn't. How would your argument have changed? Well, if the board had, or the examiner had, in your view, properly construed this and still gotten a Nordella. If the examiner had done a proper analogous test, he would have looked at the... Are you saying that if they did the proper test, Nordella could never have properly been considered an analogous part? That's exactly right. But how is that possible? Because... The problem you're solving is a chair for infants that moves around to comfort them. Right. Moves smoothly in a rocking fashion. And Nordella talks about how a chair moves around in a bunch of different directions. It's true. If you're working on an infant chair, and you don't have any guidance on how to do it for an infant chair, but you see, oh, here's this adult chair. It moves this way. We can adapt that to an infant chair. Why isn't that completely analogous? I think that this is... I mean, this court hears allegations of hindsight all the time. But I think this is... Well, that's pretty... I mean, if you're working on a movable chair for little kids, and you see out there a patent on movable chairs for big kids, how would you not? How would not a person of ordinary skill think to look at those teachings? Well, I'm saying if you're looking at infant products and infant soothers, are you really going to look at devices for entertaining and training adults? But you're reframing the question as infant soothers instead of chairs that move. Well, exactly. Which is why I think the preamble is important. But your invention is on a chair that moves. I would say if you look at the invention, you look at the specification in this case. The claim, and Judge Fischer looked at this... Let me get back to the question, because I'm not buying this, but let's assume that the board properly looked to Nordella as prior art. Did you have every opportunity to address why it, with the combination of Castor, didn't meet all the limitations? Yes, and there are a number of reasons. I mean, I don't think that Nordella should be applied at all. But if you assume that the preamble is not limiting and or that Nordella is somehow deemed to be analogous art, all of the claims in this case have a term that's called bottom seat. Now, bottom seat is not a term that has an ordinary meaning, and that's not uncommon. A lot of patents use terms that you have to really look at the specification to understand. Now, I understand that this court uses the broadest reasonable construction and would do so in this case, and the board should have too. But the fact that a term like bottom seat is a unique term to this patent doesn't mean that it should mean anything. Well, where does it say in the written description that it's the bottom most structure? Well, it's clearly shown that way. It doesn't say. I mean, the figures speak volumes. Right, but the figures are only illustrative. They're not. That's true. They don't define. So is there anything in the written description that actually says it's the bottom most element? I don't believe there is, although I think the use of the term bottom and the showing of it as being the lowest most supporting component in the device is enough to lead a person of ordinary skill to conclude that it's the bottom supporting piece. And bottom seat, the word seat is used, I acknowledge, in an unusual way here, but a seat for something is, in effect, a platform or something that has got some surface, some breadth. We tried to solve this problem by submitting new claims, 21 through 24, and the board found a way to reject those claims, I guess in a pattern similar to what we see throughout inter-parties review now. They don't like amendments for some reason, but we tried to address this by submitting new claims, 21 through 24, and I think the only basis for rejecting claim 24 is this indefiniteness of the word broad. I mean, I don't, I can't believe that this court would want to send a message that use of the word broad in a claim is indefinite. I mean, given what we show as our bottom seat. It wouldn't be sending a message that use of the word broad always renders the claim indefinite. It would be sending a message that the use of the word broad in this claim. But bear in mind, this court, the examiner in this case, had found in connection with an argument that the term broad was lacking in written description, said that one may easily determine that the bottom seat of the invention is wide relative to other elements. So wide relative to other elements is a plausible construction for what broad should mean. It's broader than everything else. It's wider than everything else. And yet, despite that finding, the board goes on to say, well, we don't know when something ceases to be broad. They know perfectly well when something's broad, but we can't tell when it stops being broad. I just don't think that that pulls water, frankly. But wasn't that claim also rejected for obviousness? It was, but the board never mentioned anything about generally flat plate-like structure, which was in Claim 24. They rejected that without addressing why Nordella has a generally flat plate-like structure. It doesn't. It's got a frame that they're calling, the bottom seat in Nordella. So I think that Claim 24, at least, assuming that you don't agree that the use of the term broad in that context is indefinite, then Claim 24, I believe, there's no basis. There's not one bit of evidence to support the rejection of Claim 24 on the basis of Nordella. The Claim 12 also was rejected on the basis of Nordella. But in that case, Claim 12, this is a limitation unique to Claim 12, not in Claim 19 or 21. The second motion mechanism is disposed between a supporting element and a bottom seat. Now, it used, I'm not sure what, it used between as meaning an elevation, a difference in elevation. In other words, my hand is between the top of that flagpole and the base of it, because it's higher in elevation than the bottom and lower in elevation than the top. That's the standard that it used or the meaning for between when it looked at Claim 1 in the context of NAFDI. In Claim 12, the second motion mechanism, which is the hydraulic cylinder that moves the chair up and down in Nordella, has to be between the supporting element, which is the frame that surrounds it, and the bottom seat, which is this frame 64. It's not, it doesn't meet its own elevational definition, and it doesn't meet the more standard definition in the space that separates. So, I don't think Claim 12 has all of the limitations of Nordella. And I think that that's a problem. In Claim 23 also, Claim 23 calls for guiding surfaces. Now, we have talked at considerable length about the absence of guiding surfaces. There's just nothing shown in Nordella to meet Claim 23. So, I think, and I don't want to neglect Claims 1 and 2, because they're based on a different combination of references. But again, we have bottom seat construed essentially to mean anything. And I don't think, even under the broadest reasonable construction, you can take a term like bottom seat that doesn't have an ordinary meaning and simply apply any definition, which is essentially what the board did here. And again, the between limitation is just simply not met, not even close in the NAFTA reference. So, I see I'm almost out of time. We'll restore your three minutes for rebuttal. Thank you. Just why don't we wait for a second. Okay. Of course. You're the most important person on this panel. Okay. You can begin. Thank you, and may it please the Court. My name is Daniel Green. I'm with Council for Authority Industries. The judgment of the board in this instance should be affirmed. It was based on reasonable claim constructions. It was based on substantial, in fact, ample evidence before the board. Essentially, these claims are very broadly drafted. They require no more than a generically recited seat body and a base and a bottom seat, and the motion of those elements is characterized in the claims only as, quote, movable, forward and backward, driven by a, quote, motion mechanism with no additional structure. Can you explain to me how Nordella meets the dispose between elements of Claim 12? I find that drawing, I'm looking at this drawing, a little baffling to decipher. Sure, Your Honor. I believe that's Figure 2 of Nordella. So for the dispose between element, if you look at Figure 2, which is at page A1258, essentially there's an upper frame, which is element 54, and it's separated from the lower frame, element 64, and extending vertically between those two elements is the cylinder, which is element 166, and it's that hydraulic cylinder that is the second motion mechanism within Nordella. So what Wonderland's essential complaint is that they believe that the board created a, quote, definition of dispose between as meaning strictly elevational, and the fact that a portion of that cylinder is co-elevational with the upper frame excludes it from being, quote, dispose between at all, but in fact what the board did is they simply said that dispose between, being very broad language, doesn't exclude an elevational meaning, but it's certainly not limited to an elevational meaning. So in the broadest reasonable construction, they concluded that that is between the upper and lower frames. So these claims, again, they're just movable by, quote, motion mechanisms, and so given such generic broad language, it can come as no surprise that identical structure in the prior art was found by the board to meet each and every element, and importantly, Wonderland doesn't actually argue in its briefing at all that any particular claim structure in its claims is missing from these prior art teachings. What they do instead, they try to read their claims around those prior art teachings by importing limitations from the specification. At least as to claim 19, I'm having a hard time understanding how the preamble is not limiting. Well, as far as, if I could just for a moment, our position is that the preamble wasn't reached by the board and for good reason because it wasn't necessary. It wouldn't be dispositive either way. If the preamble is limiting, all it means is that it's a limitation that has to be taught, which it undisputedly is by the primary reference, the caster reference. If the preamble is not limiting, then it just broadens out the scope of analogous art even further and would include things like Nordella. On the merits about whether the preamble should be limiting, the words infant and rocking don't actually help to define any structure or color, the meaning of any structure in the claims. Again, even within, is claim 19 you're referring to? Yes. Even within claim 19, there's nothing, for example, about, say, the seat body that discusses structure that would be necessary to accommodate an infant. There's nothing about the motion mechanism that has a particular soothing efficacy, a particular noise level. None of the things that Wonderland repeatedly brings up as supposedly distinguishing aspects of its claims just aren't in those claims. But if there was something in there that suggested a particular sizing, a particular cushioning, a particular movement profile for the claimant. But it's the seat body and the bottom seat that's the antecedent basis for their references in claim 19, is it not? Yes, there is some antecedent basis. But I think, as we pointed out in our briefing, that although there are two reasons why, nonetheless, these claims should not have the preamble imported. One is that although the seat body and bottom seat were providing antecedent basis, we cited two cases showing that at least when the remainder of the preamble does not provide antecedent basis but is only a statement of intended use, there's no reason to import a preamble wholesale when the other language stating that simply this device is intended for infant rocking purposes, that should not also be brought in. But doesn't infant rocking chair provide structure for the seat body and bottom seat? No, I don't believe it does, Your Honor. The seat body is claimed very generically. At most, I think what the examiner and the board did is the only weight that really that carries at all is that the seat as a whole and the seat body must at least be capable of holding an infant, which Nordella and any of the other prior are certainly capable of doing that. It wasn't limited to devices that are specifically designed for holding infants, but when you include in your claim body just a seat body without any other defining characteristics, the word infant doesn't actually add anything to it other than to indicate that a seat that couldn't possibly accommodate an infant would not be within the scope of the claim. But nobody disputes that Nordella is capable of holding an infant just like it's capable of holding a child or an adult. So, as I mentioned, most of what Wonderland is arguing that distinguishes their claims are things that are not recited, such as the curved motion, the soothing efficacy. Had they wanted such limitations to be in their claims and meaningful, they had the opportunity in the re-exam proceeding to make those changes, but they tried to have their cake and eat it too, and they just can't have it both ways to try to read their claims in such an unreasonable and limiting manner. But, in fact, I think it's telling that Claim 24, which was added, does add additional structure. So, at least with respect to what Claim 24 adds, for example, the broad plate, like any of that language that they say is also connoted by just the words bottom seat, that can't be the case because if it were, they wouldn't have had to add Claim 24 to make that distinction. If you could understand broad, meaning broad as in relation to the other portions of the structure. Why is it enough for what? For purposes of rendering it sufficiently definite. For definiteness? Well, so I think the problem with the definiteness of the term broad in the context of this pattern is not that, as the board said, it's not whether it's unclear whether something can be broad in relation to other elements. The question is, at some point, there's a threshold where it becomes very highly subjective. This podium might be considered broad relative to me, but as I shrink it down and make it smaller and smaller, at some point, it's going to cease to be what someone might consider broad, but somebody else might think it still is broad. So, there's a threshold there, and likewise, if it was a very small podium, at some point, it would become broad if it got larger. So, it's not just the issue that broad somehow, you can't see that something is broad relative to other elements in something like Nordella or in the NAFTA reference. The issue is whether the public would be on fair notice when a structure becomes so small that it no longer, at that boundary, can... Wasn't there a bit of an inconsistency, though, in the board being able to define it for written description purposes and then saying it can't be defined for definiteness? Well, I think that the board harmonized those two decisions quite correctly when they said at page A11, it's not the issue that the claim is indefinite because it's unclear what can be broad. It's only an issue that there's no way to determine when something ceases to be broad. So, in the context of the Nordella frame, the board had no trouble seeing that relative to many elements, including the cylinder and the chair, that element was, in a sense, broad and would meet the claim language for that reason, but looking more generally in terms of what might otherwise be broad, a slightly different structure, they said, well, at some point, that language breaks down. It's unclear in the context of this patent, especially because broad is a term of degree. It's a term that was introduced for the very first time in the reexamination, and there's not only no definition in the specification of what broad might mean, there's not even an indication that what is in the specification is considered to be broad by the patentee. So, in that situation, I think the board was well within its discretion to say that this is not sufficiently clear to advise a person skilled in the art what it might mean. Do you agree that the board used a different portion of the BGO test than the examiner did? No, I disagree with that completely, and this goes to the new ground of rejection argument. I think to show that this was not a new ground of rejection in any sense, this Court need look no further than Wonderland's brief before the board at page 8-428, where they argued, quote, the patent owner believes that Nordella cannot possibly be considered reasonably pertinent to the invention of the claims at issue in this appeal. So, they were affirmatively arguing to the board that BGO prong 2 was not met. So, how could the board then have made this brand new rejection? Well, the answer is they didn't, because it was there all along. If we look back to the very first office action at page 8-1089, we see that the substance of the BGO prong 2 was there. Through the right of appeal notice, to page 8-763-64, talking about what Nordella and Castor were concerned with, what were the problems that they were trying to solve, before the examiner there concluded that a person of skill in the art would look to Nordella's teachings when seeking to improve the device of Castor. So, it was there all along, and that's exactly why Wonderland argued it to the board. So, there was no unfair surprise, anything like that. Under the Rambus test from this court, there was certainly a fair opportunity to react to that thrust of that rejection. I think just suggesting that Nordella is analogous art at all is incumbent upon any patent owner to argue against both prongs 1 and prong 2. But regardless, here they actually did respond to both prongs 1 and prong 2. We have a lot in the record arguing against each one, but certainly the one that the board actually did rely on in this case. A couple of things I'd just like to note. One is, Wonderland never argued to the board that a lot of the features that it argues in its brief that are allegedly lacking, even if they are in fact somehow lacking under the claim construction of the Wonderland advances, that those features were nonetheless obvious. All of the arguments were sounding in anticipation all along, and we think it's incumbent upon Wonderland to demonstrate to the board and to this court the features that it believes are not only novel, but go above and beyond and are also demonstrative of non-obviousness. But because they didn't do that, Wonderland failed to rebut the prima facie case. Many of these aspects, whether it's the bottom seat or whether the second motion mechanism in Nordella is between the upper frame and the lower frame, these are issues that were argued solely as supposedly being novel features. But to fail to argue any of those features as going to that next threshold and exceeding the obviousness standard, we think that's problematic. We think that's why what they briefed to this court is largely waived. They did not argue that any of those aspects of these claims were in any way inventive. So in this situation, we don't see any reason to disturb the board's judgment. If Wonderland didn't separately argue that these features are inventive, to do so for the first time before this court is improper and shouldn't be any basis to revisit what the board has already found. As to the actual merits of the analogous art determination, we think there's no question here that Nordella is at least reasonably pertinent to the problem that was faced by the inventor. If we look at the 609 patent, the board noted that at column one, lines 21 through 22 and following, the 609 patent is saying the problem we're trying to solve is to create motion in two directions at the same time. We want forward, backward, and we want upward and downward. So when the board saw that and also considered that Nordella, this is at page A1263 in the record, discloses rolling, quote, forward and backward, as well as, quote, upward and downward. So the structure that the patent owner was specifically looking for to accomplish the motion that it wanted was expressly taught in the motion mechanisms within the Nordella reference. And with analogous art determinations being a question of fact, there's no reason to disturb that ruling either. If the court has no further questions. There wasn't any focus of attention either by the examiner or the board solely for 103 purposes on castor and modifying castor? I'm sorry, Your Honor. I mean, castor is a child's seat, right? Yes, Your Honor. And it rocks in three directions, right? Yes, I believe that's right. And the mechanism that's being claimed and being claimed even as a baby seat by the patentee is the same art as castor, right? Yes, Your Honor. And it's just got a slightly different kind of motion. That's right, Your Honor. And it seemed to me like this is one of those fields like in KSR. There aren't very many parameters in how you can make an adjustment. So you could tweak castor in an afternoon. But that analysis is nowhere in the record. That particular analysis, I think it is in the record in a sense that if you look at the 609 patent, they actually discuss in the, I believe it's in paragraph, I'm sorry, in column one, they actually talk about what the prior art infant rocking chairs were and they only describe, they describe that rocking chairs could move forward and backward. That was one way of rocking. They describe rocking chairs that could go upward and downward. That was another. If we look at the castor reference, we see that there's rocking that goes back and forward. And actually the NAFTY reference, you can see, not only goes backward and forward, but there's sort of a pitch tilting mechanism there. So I agree, there are only so many degrees of freedom to rock a baby and anyone who's raised an infant knows that you're going to try a bunch of those in order to calm a child that's distressed. So I do think it's reflected in the record that there are only a certain number of motions that could be employed in an infant rocking setting. Okay. Thank you. Just a couple of points. First, this court in Enricle urged that you look specifically at the specific problem addressed by the inventor. Okay. And the MPEP suggests that you look at the specification to identify the problem. Okay. The board did not do that. The board walked away from what the examiner had done, which is to identify multiple degrees of freedom in both Nordella and castor, said nothing about what our invention was or what our specification said. I think that's a problem. The board then identifies… Well, how specific does the problem have to be? Well, the MPEP recognizes that you can define it a couple of different ways. And this court's cases say when it's defined too broadly, it's a problem. It opens up everything under the sun to be applied as prior art. I agree with you, Judge Clevenger. Castor isn't that different, I mean, as baby soothers go. But that's not what either the board or the examiner did. They took the seat off of castor and put it in place of the Nordella seat, or they took the guts of the Nordella device and said, we're going to put that into castor. That's what they said. And I believe that the only way you can identify the problem, for purposes of the ALGOS-R test, is to ignore the preamble and pay no attention to the specification. And I think that's what they did, and I think that's the error. Or failure. You don't get your patent, you get to go back and they have a do-over? Well, if we did, I think we could show that hydraulics of Nordella are incapable of doing a rocking motion. You can't change direction. I mean, I would have thought the examiners knew that. They're showing under KSR that one of skill and the art wouldn't understand that this is a mechanical field and there are a finite number of solutions to the problem, and it takes not very long to come up with them. That can be said about any mechanical invention. And you can say there's a finite number of ways to do everything. There always is. I mean, every patent that's granted is made up of bits and pieces of the prior art. We weren't the ones that said it. Yeah. So, I mean, I don't think that that really gets anywhere, because the… It's been getting people lots of places. Well, it's gotten me in a pickle here, but I believe that the test that you have to do identifying the problem, you look at the specification. You look at the claim as fully construed. And Judge Fisher construed this preamble and had no hesitation. She looked at it. She listened to a complete oral argument on Markman, and I don't think that the determination of whether the preamble is limiting is subject to the broadest reasonable standard. Maybe I'm wrong about that, but I think once it's in as a limitation, then it gets broadest reasonable treatment. But I don't think the determination of whether the preamble is limiting is subject to the broadest reasonable standard. And Judge Fisher called it as she saw it. She's an experienced judge. She said these preambles breathe life and meaning, and especially Claim 19, it meets all of this court's requirements for a preamble to be limiting. And I believe that the preamble led this board's ignoring the preamble and ignoring the specification, too, led to this identification of essentially the only common denominator. I mean, I don't think you can identify the problem by simply saying what a piece of prior art has in common with the invention. That's what they did here. They simply said, we see a common denominator here, moving chairs. Well, that ignores rocking. I mean, I don't think Nordella could rock. A hydraulic system can't change immediately the way you'd have to get a smooth motion. And my opposing counsel pointed out, well, we don't have curved motion in the claim. We do. We put it into Claim 21 expressly to try and obviate some of the applicability, if you will, of Nordella. We tried to put it in Claim 21. It says adapted to engage in curved motion. So I don't know that there's anything other to conclude. I think that the preamble is the nub of it. And that's a de novo issue on claim construction. That led to the erroneous application of the second vizio test, and that's where Nordella came in as analogous art, and I don't think it should have. All right, thank you. Cases will all be submitted. All rise.